UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARY C.[1],
 Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
 Defendant.

Case No. 2:24-cv-1819
Litkovitz, M.J.

ORDER

  Plaintiff Mary C. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 8), the Commissioner's response in opposition (Doc. 10), and plaintiff's reply memorandum (Doc. 11).

**I. Procedural Background**

  Plaintiff protectively filed an application for DIB on February 16, 2022, alleging an onset of disability of November 30, 2020, due to fibromyalgia. (Tr. 150-56, *see also* Tr. 171). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* telephone hearing before administrative law judge (ALJ) Jeffrey Hartranft. Plaintiff and a vocational expert (VE) appeared and testified at the hearing on March 24, 2023. (Tr. 29-50). On June 5, 2023, the ALJ issued a decision, concluding that plaintiff was not disabled. (Tr. 14-28). This decision became the final decision of the Commissioner when the Appeals Council denied review on February 26, 2024. (Tr. 1-6).

**II. Analysis**

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that

2

the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2025.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since November 30, 2020, the alleged onset date (20 C.F.R. § 404.1571 *et seq*.).
>
> 3. [Plaintiff] has the following severe impairment: fibromyalgia (20 C.F.R. § 404.1520(c)).
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except: [plaintiff] can occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; can frequently reach and handle; and must avoid workplace hazards such as unprotected heights and machinery. [Plaintiff] would need to be allowed to stand/walk for 2-3 minutes after sitting for a half hour. This could be combined with other workplace tasks and the usual breaks, but as a result [plaintiff] would be off tasks 10% of the workday in addition to the usual breaks.
>
> 6. [Plaintiff] is capable of performing past relevant work as an insurance customer service representative/file clerk. This work does not require the performance of work-related activities precluded by [plaintiff]'s residual functional capacity (20 C.F.R. § 404.1565).
>
> 7. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from November 30, 2020, through the date of this decision (20 C.F.R. § 404.1520(g)).

(Tr. 19-25).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 587 U.S. 97 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Error

Plaintiff raises a single assignment of error: that the ALJ failed to account for the total limiting effects of plaintiff's fibromyalgia in the RFC finding. (Doc. 8 at PageID 371). Plaintiff asserts that the ALJ erred in assessing the severity of, and the limitations presented by, her fibromyalgia, an impairment he found to be severe. Specifically, plaintiff argues the ALJ failed to properly evaluate plaintiff's statements as to the severity of her fibromyalgia and her ability to do a range of activities and failed to take her work history into account. (*Id.* at PageID 384). Plaintiff also argues the ALJ erred in his RFC determination by not properly evaluating the medical opinions and prior administrative medical findings. (*Id.* at PageID 373-76).

The Commissioner counters that the ALJ's decision is supported by substantial evidence because the ALJ properly evaluated plaintiff's fibromyalgia. (Doc. 10). The Commissioner contends that in finding plaintiff capable of sedentary work with postural and environmental limitations, the ALJ properly considered the record as a whole, including plaintiff's subjective complaints. (*Id.* at PageID 391-99).

**E. Analysis**

1. <u>RFC Determination</u>

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). A claimant's RFC assessment must be based on all the relevant evidence in her case file. (*Id.*). The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)-(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary

5

weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

The ALJ is charged with the final responsibility in determining a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). The ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)). The plaintiff "bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ." *Id.* (citing *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008)).

ALJs must "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2. *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

2. Fibromyalgia

The Sixth Circuit requires an ALJ to "give due consideration to [a plaintiff's] diagnosis of severe fibromyalgia" and has "repeatedly recognized that fibromyalgia can be a severe and disabling impairment." *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 434 (6th Cir. 2013) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (in turn citing *Preston v. Sec'y of H.H.S.*, 854 F.2d 815, 820 (6th Cir. 1988) (per curiam)); *see also Kalmbach v.*

6

*Comm'r of Soc. Sec.*, 409 F. App'x 852, 859-60 (6th Cir. 2011); *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 778 (6th Cir. 2008) (per curiam)). Fibromyalgia "causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances." *Preston*, 854 F.2d at 817.

SSR 12-2p provides guidance on how the agency both develops evidence to establish that a person has a medically determinable impairment of fibromyalgia and evaluates fibromyalgia in disability claims. SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). SSR 12-2p describes fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." *Id*. SSR 12-2p explains that fibromyalgia is a "common syndrome" and that a person's symptoms must be considered when the agency decides if the individual has a medically determinable impairment of fibromyalgia. *Id*. "SSR 12-2p continues to require 'sufficient *objective evidence* to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity.'" *Clemow v. Comm'r of Soc. Sec.*, No. 1:20-cv-592, 2021 WL 6125021, at *4 (S.D. Ohio Dec. 28, 2021) (emphasis in original) (quoting SSR 12-2p, 2012 WL 3104869, at *2).

There is no question that a diagnosis of fibromyalgia, which the ALJ fully accepts here, says little about the degree of a plaintiff's functional impairment. *Stephanie K. v. Comm'r of Soc. Sec.,* No. 1:22-cv-344, 2023 WL 2895603, at *5 (S.D. Ohio Apr. 11, 2023). "In cases where a [p]laintiff has fibromyalgia, the 'cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition.'" *Huffman v. Saul*, No. 5:19-cv-449, 2020 WL 6937441, at *3 (E.D. Ky. Nov. 24, 2020) (quoting *Rogers*, 486 F.3d at 247); *see also Kalmbach*, 409 F. App'x at 862 ("[C]laims related to fibromyalgia are related to

7

the *symptoms* associated with the condition—including complaints of pain, stiffness, fatigue, and inability to concentrate—rather than the underlying condition itself.") (emphasis in original). "'Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis in evaluating complaints of disabling pain is employed.'" *Id.* (quoting *Kalmbach*, 409 F. App'x at 862 (citing 20 C.F.R. § 416.929(a)).

    3. <u>Symptom Severity Analysis</u>

A two-step inquiry applies to symptom evaluation. The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones,* 336 F.3d at 475-76. Step two of symptom evaluation shifts to the severity of a claimant's symptoms. The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. § 404.1529(a) and (c); SSR 16-3p, 2016 WL 1119029, at *4. In making this determination, the ALJ will consider the following:

    (i)    Your daily activities;

    (ii)    The location, duration, frequency, and intensity of your pain or other symptoms;

    (iii)    Precipitating and aggravating factors;

    (iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

    (v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

    (vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

      (vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9. *See also Id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record").

    4.  <u>Plaintiff's Hearing Testimony</u>

Plaintiff testified at the administrative hearing that she doesn't "drive very much anymore" because "it hurts [her] legs to hold the pedal down." (Tr. 35). Plaintiff testified that she suffers from "a lot of pain and soreness in [her] muscles." (Tr. 38). She noted that "it hurts all the time" but less when she lies down, as compared to when she is moving around. (*Id.*). Her pain is primarily located in her arms, legs, back of her shoulders, and neck. (*Id.*). Her treatment

9

for pain includes taking the medication Amitriptyline to sleep and Tramadol, which "takes the majority of the pain away, but not all of it." (*Id.*). She further stated that she is "afraid to take anything stronger." (*Id.*). She was seeing someone to help with muscle pain but could not afford to keep receiving these treatments. (*Id.*). Plaintiff also testified to having memory problems. (*Id.*). She forgets what she is doing 4-5 times per day. (Tr. 39). Plaintiff did not believe she could perform her same job duties as before because with her legs hanging down she would end up getting a charley horse, "so I have to constantly keep moving my legs, or stand up and sit down." (Tr. 40). Plaintiff estimated that she could sit for about 30 minutes without having to stand; she would then stand for 5-10 minutes and then sit again. (*Id.*).

When examined by her counsel, plaintiff testified that she has issues with her hands and arms. (Tr. 41). She had carpal tunnel surgery five to six years prior to the hearing. (*Id.*). She does not believe she could "get through a full workday using [her] hands and arms." (Tr. 42). Before she stopped working, she cut back to 3 days per week because she needed to rest between days. (*Id.*). Plaintiff rated her pain severity at a level of 5-6 when lying down and 8-9 when up and doing something on a 0-10 visual analog scale. (*Id.*). Plaintiff also testified to being tired all the time and spends 5 to 6 hours each day lying down. (Tr. 43).

5. The ALJ's RFC and Symptom Severity Evaluation is Supported by Substantial Evidence

Plaintiff argues that the ALJ did not properly determine her RFC because he failed to account for the "total limiting effects" of her fibromyalgia by "overlook[ing] and/or improperly reject[ing] evidence supportive of a favorable outcome" and "[h]is highly selective analysis led to a denial of benefits that is not supported by substantial evidence. . . ." (Doc. 8 at PageID 379). Plaintiff's assignment of error is two-fold. First, plaintiff alleges the ALJ erred in his evaluation of plaintiff's physical symptoms by discounting plaintiff's subjective symptoms from her

10

fibromyalgia. (*Id*. at PageID 380-385). Plaintiff also argues that the ALJ improperly weighed the opinions of the state agency consultants and plaintiff's treating physician in determining that plaintiff has the physical RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(b), with additional limitations. (*Id*.). Second, plaintiff alleges the ALJ failed to consider her strong work history in accordance with § 404.1529(c)(3) and SSR 16-3p. (*Id*. at PageID 384).

The ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (Tr. 22). However, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id*.). The ALJ reasoned:

> Regarding the claimant's physical impairments, the record reflects a history of fibromyalgia with generally conservative treatment consisting of [medication] management for symptoms throughout the period at issue. Despite the claimant's subjective reports of pain and functional limitation, the record showed the claimant had no significant physical examination findings during the period at issue, with only some tenderness reflected. . . . Additionally, while the claimant reported difficulty with manipulative activities due to her history of carpal tunnel surgery, the physical examinations of record regularly reflected normal strength in all extremities including with respect to grip strength. Therefore, the undersigned having considered the claimant's subjective reports evaluated against the treatment evidence of record, finds the claimant able to perform sedentary work with the claimant able to occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; can frequently reach and handle; and must avoid workplace hazards such as unprotected heights and machinery. The claimant would need to be allowed to stand/walk for 2-3 minutes after sitting for a half hour. This could be combined with other workplace tasks and the usual breaks, but as a result the claimant would be off tasks 10% of the workplace in addition to the usual breaks.

(Tr. 22).

The ALJ reasonably determined that plaintiff's statements about the intensity, persistence, and limiting effects of her fibromyalgia symptoms are not entirely consistent with the evidence of record. (Tr. 22). Consistent with SSR 16-13, the ALJ considered plaintiff's

11

limited treatment for fibromyalgia in the symptom consistency analysis. Although plaintiff alleged an onset date of disability in November 2020, the ALJ reasonably noted that plaintiff received no significant treatment from the alleged onset date through March 2022. (Tr. 21). Plaintiff points to no evidence calling this finding into question. Plaintiff saw Dr. Guisinger in January 2022 for phlegm, nausea, and a cough. (Tr. 255). When seen on March 4, 2022 by Dr. Guisinger, plaintiff presented with disability paperwork for a diagnosis of fibromyalgia, and she complained of having a hard time walking a lot and needing rest when active. She had not taken Tramadol since 2019 and was requesting a prescription. He provided a referral to a rheumatologist and prescribed Amitriptyline and Metoprolol. (Tr. 21, citing Tr. 250). Plaintiff was then seen for a rheumatology consultation in June 2022. She reported a medication regimen of Tramadol, Amitriptyline, Losartan, and Metoprolol and was prescribed a trial of Paxlovid for generalized osteoarthritis. (Tr. 22, citing Tr. 316, 333). While plaintiff also alleged memory problems, she admitted she had not received any treatment for this symptom. (Tr. 21, citing Tr. 39). Additionally, plaintiff underwent a carpal tunnel release procedure prior to the alleged onset date. However, she returned to work following the procedure and sought no further treatment for this impairment during the relevant time period. (Tr. 41). The ALJ reasonably considered plaintiff's conservative treatment history in discounting the consistency of her alleged symptoms with the record evidence. Courts routinely uphold an ALJ's consideration of the conservative nature of a claimant's treatment as one factor in evaluating the consistency of a claimant's subjective symptoms with a claim of disability. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638-39 (6th Cir. 2016) (claimant's routine and/or conservative treatment for allegedly disabling impairments supported ALJ's assessment) (citing *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015)). While the extent of treatment pursued does not necessarily

12

translate into the extent to which a claimant is functionally limited, the ALJ's consideration of plaintiff's level and type of treatment was appropriate and substantially supports his finding.

The ALJ also considered the lack of significant physical examination findings to support the extent of plaintiff's alleged limitations. (Tr. 22). Dr. Guisinger reported no physical exam findings in any of his treatment notes that would support the limitations alleged by plaintiff. The ALJ also noted that at plaintiff's rheumatology visit, there were "no physical examination findings, tender point assessments, nor rheumatologic lab work ups at this visit to assess or confirm alleged symptomology." (Tr. 22, citing Tr. 316-335). The ALJ further noted that in July 2022, plaintiff's rheumatoid factor was negative. (Tr. 21, citing Tr. 339). At plaintiff's consultative examination with Dr. Cavender in June 2022, plaintiff appeared in no acute distress with normal gait, full ranges of motion, full strength, full grip strength, intact sensation, normal coordination, and normal reflexes. (Tr. 304-05, 307-10). Plaintiff could get on and off the examination table without difficulty or assistance and walk on heels and toes. (Tr. 305, 306-07). She exhibited tenderness to palpation in the bilateral upper and lower arms and lower legs, and in the bilateral cervical paraspinal, trapezius, posterior shoulder, and rhomboid musculature. (Tr. 306). She also displayed full grip strength, normal dexterity, and full ability to make a fist and oppose her fingers (Tr. 306) and could grasp small objects and manipulate them without pain exacerbation (Tr. 311). The ALJ noted that plaintiff's reported difficulty with manipulative abilities due to her history of carpal tunnel surgery conflicted with the examination findings reported by Dr. Cavender. The ALJ acknowledged that plaintiff had some tenderness on consultative examination, but he reasonably determined that plaintiff's limited treatment and examination findings did not support plaintiff's statements about her the severity of her symptoms.

13

The ALJ also considered the persuasiveness of the medical opinions in assessing plaintiff's symptom severity and RFC.  Plaintiff contends the ALJ failed to consider the consistency of plaintiff's subjective symptoms with the state agency medical consultant reports, alleging that their "assessment of chronic fatigue syndrome as a medically determinable impairment plainly confirms her testimony in this regard."  (Doc. 8 at PageID 382, citing Tr. 54). Plaintiff alleges the state agency physicians' assessment of chronic fatigue syndrome is consistent with the symptoms described in SSR 12-2p, to wit: fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, and irritable bowel syndrome.  "But 'disability is determined by the *functional limitations* imposed by a condition, not the mere diagnosis of it.'"  *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019) (emphasis added) (quoting *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)).  Thus, the fact that plaintiff was diagnosed with chronic fatigue syndrome or fibromyalgia says nothing about the extent of her functional limitations from that condition.  Plaintiff's argument is not well-taken.

Plaintiff also argues the "consultative examination [by Dr. Cavender] ordered by SSA confirmed that she has arm and leg pain resulting in frequent awakenings and subsequent insomnia with daytime fatigue; pain while sitting and standing; 9/10 ambulatory pain after 30 minutes with unusual fatigue; and morning stiffness."  (Doc. 8 at PageID 382, citing Tr. 304). However, the findings that plaintiff alleges the consultative examiner "confirmed" are actually plaintiff's reported symptoms to Dr. Cavender and not any findings made by Dr. Cavender. While these reported symptoms may be consistent with her fibromyalgia diagnosis, they do not in themselves support the alleged limitations from that condition.

14

Plaintiff additionally argues the ALJ erroneously rejected the opinion of Dr. Guisinger, her treating physician, as unsupported because Dr. Guisinger set forth eight specific clinical findings in his report to support his opinion, and plaintiff's testimony supports the findings set forth in Dr. Guisinger's questionnaire. (Doc. 8 at PageID 382; Doc. 11 at PageID 402).

The ALJ must determine the persuasiveness of a medical opinion by considering five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[2] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). While the ALJ is required to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision, 20 C.F.R. § 404.1520c(b)(2), the ALJ "may, but [is] not required to, explain" how he considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.*

---

[2] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

Dr. Guisinger completed two medical source statements in March 2022, in which he reported that plaintiff suffers from a history of widespread pain for three or more months, pain in 11 or more pressure points, stiffness, irritable bowel syndrome, tension headaches, sleep disturbance, chronic fatigue, and memory loss. Dr. Guisinger also opined that plaintiff must occasionally elevate her legs. (Tr. 266, 343). As to her functional limitations, Dr. Guisinger opined that plaintiff could lift 25 pounds frequently; sit for 30 minutes at a time; stand and walk for less than 2 hours; must periodically alternate sitting and standing at interval not to exceed 30 minutes; could occasionally balance, stoop, and crawl; and never climb, kneel, and crouch. Dr. Guisinger found no reaching or handling limitations and believed plaintiff should avoid exposure to temperature extremes. (Tr. 267-68).

The ALJ found Dr. Guisinger's opinions not persuasive, stating:

> In a questionnaire prepared by the claimant's representative dated March 4, 2022, Kent Guisinger, D.O., indicted [sic] the claimant could frequently lift up to 25 pounds; stand and walk less than 2 hours; must periodically alternate sitting and standing at interval not to exceed 30 minutes; could occasionally balance, stoop, and crawl; could never climb, knee, or crouch; had no reaching or handling limitations; and should avoid exposure to temperature extremes (Exhibit 1F, pages 23-24). In an additional form on the same date, Dr. Guisinger noted the claimant would occasionally need to elevate her legs during an 8-hour workday and noted no work capacity (Exhibit 1F, page 22). This material appears in duplicate at Exhibit 7F, with an additional page reflected severe pain associated with fibromyalgia, marked restriction of activities of daily living, marked difficulty in maintaining social functioning, and deficiencies of concentration, persistent or pace resulting from frequent failure to complete tasks in a timely manner due to pain (Exhibit 7F, page 4). The undersigned has found these assessment[s] unpersuasive. Dr. Guisinger identifies no support for the extent of functional limitations assessed, nor even support for the alleged underlying diagnoses of fibromyalgia. Furthermore, to the extent Dr. Guisinger offers an opinion on the ultimate question of the claimant's ability to work, the opinion as to whether the claimant can work is on an issue reserved to the Commissioner and therefore is neither inherently valuable or persuasive (20 C.F.R. §§ 404.1520b(c) and 416.920b(c)).

(Tr. 23).

The ALJ's supportability finding is substantially supported by the evidence. As the ALJ reasonably determined, Dr. Guisinger did not support his opinion with objective medical evidence or supporting explanations for his opinion as required by 20 C.F.R. §404.1520c(c)(1). As explained above, plaintiff had two visits with Dr. Guisinger in January and March 2022 before he issued his opinion, but Dr. Guisinger did not set forth any clinical or objective examination findings in those progress notes. (Tr. 250-51, 255-57). The first time Dr. Guisinger reported plaintiff's symptoms was on a checkmark form provided to him by plaintiff during the March 4, 2022 visits. The form listed various fibromyalgia symptoms, and Dr. Guisinger checked the following symptoms: history of widespread pain for three or more months, pain in eleven or more pressure points, stiffness, irritable bowel syndrome, tension headaches, sleep disturbance, chronic fatigue, memory loss, and inability to ambulate effectively. (Tr. 266, 343). But none of these symptoms are reflected in Dr. Guisinger's contemporaneous progress notes. A lack of contemporaneous medical records from an opinion provider is an appropriate supportability consideration. *See Cremens v. Comm'r of Soc. Sec.*, No. 1:18-cv-995, 2019 WL 3553916, at *11 (N.D. Ohio Aug. 5, 2019) (quoting *Bruza v. Comm'r of Soc. Sec.*, No. 1:07-cv-1027, 2008 WL 3979261, at *6 (W.D. Mich. Aug. 4, 2008) ("The absence of progress notes and other contemporaneous medical records regarding the treatment provided by [a physician] for the period at issue entitles his unadorned opinion to virtually no weight.")).[3]

---

[3] While the *Cremens* and *Bruza* courts addressed supportability under the treating physician rule, supportability is similarly defined in the new regulations. *Compare* 20 U.S.C. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.") *with id.* at § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). The Court finds that these authorities remain persuasive.

Nor did Dr. Guisinger explain the basis for his findings as the questionnaire invited. As noted by the ALJ, Dr. Guisinger's opinion lacks any explanation for his assessment of limitations. (Tr. 23, citing Tr. 266-268, 341-42). The form completed by Dr. Guisinger had space allocated specifically for noting "supportive medical findings," but he chose not to include additional supporting information. (Tr. 266-268, 341-42). *See Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016) (ALJ's decision to not give significant weight to "check-box" medical opinion upheld where physician "provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence."); *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016) (ALJ properly discounted checklist opinion that did not provide an explanation for physician's findings). The ALJ reasonably determined that the lack of supporting explanations by Dr. Guisinger rendered his opinion unpersuasive.

Plaintiff also argues that her testimony supports Dr. Guisinger's opinion. Plaintiff's argument appears to conflate the criteria for supportability and consistency under 20 C.F.R. § 404.1520c(c)(1), (2). The ALJ found Dr. Guisinger's opinion unpersuasive on the basis that it was unsupported by his own treatment records or supporting explanations, rather than due to the opinion's inconsistency with the record. (Tr. 23, finding that "Dr. Guisinger identifies no support for the extent of the functional limitations assessed, nor even support for he alleged underlying diagnoses of fibromyalgia"). Plaintiff does not point to any other medical evidence from Dr. Guisinger's treatment notes supporting the extensive functional limitations assessed in his opinion.

Plaintiff's argument that the ALJ failed to consider her work history is also not well-taken. (Doc. 8 at PageID 384). The ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence. *See*

18

*White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) ("[T]he ALJ expressly stated that she had considered [the predecessor to SSR 16-3p], which details the factors to address in assessing credibility. There is no indication that the ALJ failed to do so. This claim therefore lacks merit. . . ."). Nevertheless, when reviewing the decision as a whole, the Court concludes the ALJ clearly considered plaintiff's extensive work history and earnings. The ALJ discussed plaintiff's prior work and noted, "[Plaintiff]'s testimony established that she performed this work for over 19 years," and her "earnings record[] reveals earnings in excess of substantial gainful activity thresholds from 2005 through 2020." (Tr. 24). While the ALJ's discussion of plaintiff's work history was in connection with Step 4 of the sequential evaluation process, the ALJ's discussion indicates he was well-aware of plaintiff's work record.[4]

The ALJ's conclusion that the location, duration, frequency, and intensity of plaintiff's alleged symptoms, as well as precipitating and aggravating factors, are adequately addressed and accommodated by an RFC for a limited range of sedentary work. (Tr. 24). In evaluating the intensity, persistence, or limiting effects of plaintiff's symptoms, the ALJ noted the history of conservative treatment and lack of supporting clinical and objective medical findings in the record. The ALJ here conducted a thorough evaluation of plaintiff's complaints of fatigue and other disabling symptoms in light of the record as a whole. Substantial evidence supports the ALJ's evaluation of plaintiff's subjective allegations and his conclusion that such allegations

---

[4] This Court has found that a "good work history may be deemed probative of credibility[.]" *Kimberly C. v. Comm'r of Soc. Sec.*, No. 1:22-cv-637, 2023 WL 6807955, at *6 (S.D. Ohio Oct. 16, 2023) (quoting *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (in turn quoting *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998)). "In particular, an extensive work history, in conjunction with 'attempts to continue working despite [ ] disability support [a plaintiff's] credibility.'" *Id.* Unlike *White*, where the plaintiff attempted to work over the course of two years despite his nerve pain, 312 F. App'x at 780-81, plaintiff here has cited no evidence of any similar attempts. The ALJ properly assessed the consistency of plaintiff's alleged symptoms and limitations against the record as a whole and reasonably determined that plaintiff's alleged symptoms were not fully supported.

19

were not entirely consistent with the medical evidence of record. *See* 20 C.F.R. § 404.1529(a). Further, the ALJ's evaluation of the medical opinion evidence is also supported by substantial evidence. The ALJ was not unreasonably selective in his consideration of the medical evidence and plaintiff's testimony. Therefore, the Court finds that the ALJ's RFC determination is supported by substantial evidence. Plaintiff's assignment of error relating to the RFC determination, symptom severity analysis, and supportability and consistency assessment of Dr. Guisinger's opinion is overruled.

### III. Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 8) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED**.

**IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner, and this case is closed on the docket of the Court.

Date: 9/4/2025

Karen L. Litkovitz
United States Magistrate Judge